## W. H. BASS et al. *v.* JOHN H. ESTILL et al.

1. PRACTICE — OFFICE CONFESSION OF JUDGMENT — ITS EFFECT. — Under the statute (Code of 1857, p. 523), an office confession of judgment must be confirmed by the court before it becomes a judgment. When confirmed, the lien thereof does not relate back to the time of confession, but only to its confirmation.

2. SAME — DEEDS IN TRUST — REGISTRATION. — A deed in trust, which was not acknowledged although registered, is no notice to third parties, and is a nullity as to all the benefits conferred by the statute upon a properly registered instrument. Work v. Harper et al., 24 Miss., 517; Tillman v. Cowand, 12 S. & M., 262. But such an instrument is valid as to all parties who have actual notice of its contents. Wailes v. Cooper et al., 24 Miss, 228.

3. PARTNERSHIP AND INDIVIDUAL CREDITORS — RIGHTS THEREOF. — The creditors of a partnership have a preference to the exclusion of the creditors of an individual member, the rights of the latter extending no further than to the surplus interest of the individual member after the joint liabilities have been satisfied. Irby v. Graham, 46 Miss., 425.

4. SAME — MARSHALING ASSETS — CASE IN JUDGMENT. — B., the judgment creditor, having notice of the trust deed of E. & F. and E. & Son; *held,* that the conveyance confers a preference to the extent of $5,000 — the sum named in it — to all the property embraced in it, both joint and several. The cotton being the fund first appointed to pay the trust debt, that must first be exhausted, then other joint assets, and, lastly, the individual property of E. When the trust creditors have been satisfied out of the joint assets, the judgment creditor has the right to the proceeds of the individual property of E., and also to the surplus interest of E. in both firms.

APPEAL from the Chancery Court of Bolivar County. Hon. E. STAFFORD, Chancellor.

The bill in this case states substantially that on the 7th day of January, 1870, Jno. H. Estill purchased from the complainants forty mules and one horse, for the sum of $6,425, upon an agreement that he should give them therefor his draft on and accepted by his brother C. R. Estill, of Richmond, Ky., with interest, until the maturity of the draft, at ten per cent., the draft maturing October 15, 1870.   That Estill at the time assured complainants that his brother would accept his bill on presentation.   Relying upon this assurance, the mules and horse were sold and delivered, and Estill gave his draft as agreed upon, but when it was presented for acceptance, C. R. Estill declined and refused to accept it, stating that he knew nothing about the transaction, and had never agreed to accept, and would not accept the draft.   That John H. Estill was well aware at the time he gave the draft that his brother would not accept it, and knew that his representations were false, and simply designed to obtain possession of the mules and horse, so as to compel some other settlement for the purchase money, and secure the possession of them for twelve months. That having obtained possession of them falsely, he removed them from Washington to Bolivar county, and delivered them in part to his son Eugene Estill, and in part to Charles Ferris, both of whom were engaged with him in the cultivation of two separate plantations in Bolivar county.   As soon as it was ascertained by John H. Estill that his draft was not accepted, he sent complainants a draft on, and accepted by his son and said Ferris, for the price of the mules given to each.   Which complainants declined to accept, inasmuch as both of the parties were wholly without means.   Complainants visited Estill and demanded settlement, and he agreed to give an office confession of judgment for the debt, with stay of execution until Nov. 1, 1870, with a deduction for the value of one horse, that had died in the possession of Estill.   In pursuance of this agreement, on the — day of April,

1870, said Estill entered in the office of the circuit clerk of Bolivar county, a confession of judgment, with interest calculated up to April 25, 1870, when the next term of the circuit court of said county should have been held, the whole amount of the debt being $6,458.30. No term of the court was held in April; but in August, 1870, the office confession of judgment was duly confirmed, and the proper judgment entered by said court against said Estill in favor of complainants.

On the same day upon which the confession of judgment was entered, Estill filed in the office of the chancery clerk of Bolivar county, a deed in trust upon the mules, to Toof, Phillips & Co., conveying the same mules purchased from complainants, which was filed after the office confession of judgment was entered.

Besides the mules, the trust deed to Toof, Phillips & Co., covered the crops of cotton to be grown by said Estill and Ferris, and Estill & Son. This trust deed was given on the mules and crop to secure advances to be made by Toof, Phillips & Co., to the amount of $5,000.

The prayer of the bill is for an injunction and receiver, and at the hearing, that the mules, cotton and corn of Estill be sold, and the proceeds applied first to complainant's judgment, or for general relief.

The injunction was issued and executed, and when the motion for receiver came up for hearing, it was agreed between the parties that to prevent loss, etc., Toof, Phillips & Co. should take the mules for the sum of $3,500, and should hold that amount to abide the final decree of the court. It was further agreed that the injunction should be so far modified as to allow the cotton to be forwarded to, and sold by Toof, Phillips & Co., and the proceeds held subject to the order of the court.

The deed in trust to Toof, Phillips & Co., by Estill, was dated April 4, 1870, was not acknowledged and was filed for record April 12, 1870. The answers set up that John H. Estill had only a half interest in the several crops, and claim that the parties pur-

chased a half interest in the mules long before the confession of the judgment by Estill.

Toof, Phillips & Co. answer: They knew nothing as to the mule purchase, nor of the circumstances attending the same, and deny all fraud charged. Claim that their deed was filed prior to the office confession of judgment, and that complainants had full notice thereof.

All the accounts between Toof, Phillips & Co., and Estill & Ferris, and Estill & Son, were referred to a commissioner, who made due report to the court.

To this report proper exceptions were filed, which were overruled by the court and an appeal was taken to this court.

The errors complained of are:

1. The court erred in decreeing that Toof, Phillips & Co., were entitled to retain in their hands to the credit of Estill & Son and Estill and Ferris, the sum of thirty-five hundred dollars, the proceeds of the sale of the mules and personal property sold by agreement of parties in the progress of the cause in the court below.

2. The court erred in decreeing in favor of Toof, Phillips & Co. the proceeds of all cotton and other goods shipped to them by Estill & Son and Estill & Ferris.

3. The court erred in not decreeing both of said amounts in favor of the appellants, and in overruling exceptions to the commissioner's report.

*W. L. Nugent,* for appellant:

1. The trust deed was never acknowledged as the law provides, was improvidently admitted to record, and is inoperative as against the judgment of the appellants. Work v. Harper, 24 Miss., 517; Tillman v. Cowand, 12 S. & M., 262; Code of 1857, art. 310.

2. The appellants are judgment creditors, holding a lien by enrolment upon the crops and mules also; and if it be conceded that the lien of Toof, Phillips & Co. upon the cotton was superior to that of the appellants, the crop sales should have been applied and exhausted before any call could be made upon the mules. Keaton

v. Miller, 38 Miss., 630 ; Ingalls v. Morgan, 10 N. Y., 178 ; Glass v. Pullen, 6 Bush. (Ky.), 346 ; 1 Story's Eq. Jur., §§ 633, 642.

3. The ordinary doctrine of the application of partnership assets does not prevail as against the judgment of the appellants. Young v. Frier, 1 Stock., Ch. 465 ; 1 Story's Eq. Jur., § 676, note 3 ; ib., § 677.   But at any rate the mules held by Estill & Son were liable to the judgment, and the decree was manifestly wrong to that extent.

4. The appellants are entitled to a decree against Toof, Phillips & Co., for the value of the mules.   They were receivers of the money raised by a sale of the mules under the order of the court, and are bound to answer for it notwithstanding their bankruptcy. If it has passed into the possession of the assignees, they are answerable for it as trustees.

The reporters find no brief on file for the appellees.

SIMRALL, J., delivered the opinion of the court.

This is a controversy between W. H. & R. T. Bass, judgment creditors of John H. Estill and Toof, Phillips & Co., now represented by their assignee in bankruptcy, under a deed of *cestui que trust*, executed by Estill for their benefit.   The property to which the respective creditors asserted a lien, has by consent been sold, and their respective claims are made to the fund realized.

W. H. & R. T. Bass assert that their judgment is older than the trust deed, and therefore they have the superior right.  On the contrary, Toof, Phillips & Co. contend that their deed in trust was elder.   But whether that pretension be sustained or not, they insist that the forty mules, the chief element in the contest, were one-half of them, the joint or partnerhip property of Estill and Ferris, who were planting partners in 1870.   And the other half were the partnership property of Estill & Son, who were planting together also in the same year ; and that the members of these respective firms united in the deed of trust to secure advances to be made for the production of the crops.   These advances are

recited in the deed to be made "to J. H. Estill, J. C. Ferris and E. H. Estill, composing the firms of Estill & Ferris, and Estill & Son." John H. Estill, with Ferris, composed one firm, and he and his son the other. Each firm cultivated separate plantations, kept independent accounts, and had separate transactions with these merchants.

The mules, plantation implements, and crops of cotton and corn to be grown in 1870, were the property included in the deed in trust.

John H. Estill made an office confession of judgment in favor of the Messrs. Bass, on the — day of April, 1870. That judgment was approved and confirmed by the circuit court on the — day of August (the previous April term had failed).

The counsel for the appellants is in mistake in supposing that W. H. & J. T. Bass acquired the benefits and liens of a *judgment* before its confirmation by the circuit court. The act done by the debtor before the clerk in vacation, "is an acknowledgment of indebtedness" (to his creditors), and "consent given for judgment to be rendered against him, at the next term of said circuit court (in favor of the creditor) for the amount and costs accruing thereon." When the plaintiffs' "statement," and the debtors' "acknowledgement" of the above purport are filed, the "clerk shall docket the cause on the appearance docket;" "and at the next term, on motion of the plaintiff, the court shall render judgment and such judgments shall be binding unless set aside during the term," etc. Code 1857, pp. 523–4, arts. 257, 258. The statute seems to be specific and plain, that the plaintiff does not acquire a judgment, until the court pronounces it. W. H. & R. T. Bass obtained a judgment at the August term of the circuit court, and not in the previous April by reason of anything that occurred before the clerk in vacation. Nor does the statute give countenance to the idea that for any purpose, of lien, or any other advantage, the judgment relates back to, and takes effect from the office confession.

The deed in trust purports to have been executed the 4th of April, 1870. It was filed for record the 12th of that month, and was recorded by the clerk. But the deed was not acknowledged by the grantor, nor was it proved by a subscribing witness. There was no authority of law to admit this deed to record, and its registration did not have the effect of notice to subsequent purchasers and creditors. In fact it was a nullity as to all the benefits conferred by statute upon a properly registered instrument. Work v. Harper, 24 Miss. Rep., 517 ; Tillman v. Cowand, 12 S. & M., 262.

If the rights of Toof, Phillips & Co. stood alone upon notice imparted by the record, it would no more avail them, than if the instrument had never been filed in the office and recorded.

But the appellants, the Messrs. Bass, had notice of the deed the same day that the office confession was taken.

The attorney for the appellants testifies that the deed was presented at the office, just after the papers for the office confession had been prepared, and requested notice to be taken that that proceeding had been first instituted. One of the appellants was present at the time. It appears that these parties were aware of the nature and purposes of the deed. See Wailes v. Cooper *et al.,* 24 Miss., 228.

Assuming it as proved that the appellants had notice of the deed in trust, any lien acquired by their judgment on the property embraced in it was subordinate to that security.

It has been argued for the appellants, that the sale and purchase of the mules had not been consummated until the office confession of judgment by Estill. Sometime prior to that, how long does not appear, the appellants sold and delivered the mules to Estill for a draft on his brother who resided in Richmond, Kentucky, on the assurance that it would be accepted. The draft was sent from Bolivar county, Mississippi, to Richmond for acceptance.

When it returned dishonored, John H. Estill sent the appel-

lants a draft on E. Estill his son, and J. C. Ferris, which was declined and returned, and, thereupon, the matter was settled by the office confession of judgment. But the mules had already been delivered to John H. Estill. Ferris states in his deposition that he bought an undivided half interest in twenty of the mules *before* the deed in trust was executed. W. N. Hood was present when the sale was made. The mules were delivered when the draft was drawn. It may be true as claimed by the counsel for appellants, that John H. Estill practiced a fraud upon the appellants by giving the draft on his brother, and they might have annulled the sale and reclaimed the mules upon the dishonor of the draft. But they did not pursue that course, but adopted means satisfactory to themselves to secure the debt.

It becomes important to analyze the several interests of the grantees in the deed in trust to the mules, so as to settle the conflicting equities of the parties claiming them or the money arising from their sale. An undivided half interest in twenty of the mules had been sold by John H. Estill to Ferris, and were held by them jointly as partnership stock before the execution of the deed in trust. These mules, on the plantation jointly cultivated by John H. Estill and Ferris, passed by the conveyance as joint or partnership effects.

E. Estill, in his answer, specifically states the terms of the partnership with his father, viz. : That he was to reside upon, take charge of and manage the two plantations, Lenoir and Lake. " His father to furnish the necessary *team* and the land," and the net proceeds to be equally divided after the expenses were paid.

The mules put by John H. Estill on these plantations were his individal property ; his son had no ownership in them ; his interest was limited to a use of the animals for the year in the production of the crops.

These twenty mules were not partnership property, and there was, therefore, no right in Toof, Phillips & Co., to assert a superior claim to them on the ground merely, that they constitute joint

assets, and should be first applied to the partnership debts.  But it was competent for John H. Estill to pledge them as a security to these merchants for the supplies and advances made to the two partnerships.  So far as the deed in trust created a security, and no farther, have Toof, Phillips & Co., by reason of it the advantage over the appellants.  The trust deed is only a security to the extent of $5,000.  To whatever extent these merchants may have advanced beyond that sum, the security can only stand as against the judgment creditors as protecting the sum named in it.

The parties to that conveyance plainly intended the trust debt should be primarily liquidated by the cotton.  As fast as prepared for market, the grantors engaged that it should be shipped to the trust creditors at Memphis for sale.  The security embraces both partnership property and the individual property of John H. Estill.  In marshalling the assets, as between Toof, Phillips & Co., and the judgment creditors of John H. Estill, it should be done upon the rule, of first applying the joint fund, upon which they have the lien, to pay their debt, and resorting to the individual property to supply a deficit.  Irby v. Graham, 46 Miss. Rep., 430.

If the crops of cotton and corn, produced by the partnership of Estill & Son, will liquidate their debt, they ought to be confined to it, so that the individual property of Jno. H. Estill may be appropriated to the judgment creditors.  It does not appear that John H. Estill had separate effects upon the plantation, cultivated on account of himself and Ferris.  The effects of that partnership, including the crops of cotton and corn, ought to pay the account of that parthership.  But the deed has this further benefit for the *cestui que trust*, namely : that all the property named in it, whether owned jointly or individually, stands as a security for the indebtedness of both the partnerships, to the extent of $5,000.  The equities of the parties stand in this category :

The trust creditors have a preference over the judgment credit-

ors, to all the partnership effects of both the partnerships, whether plantation implements, mules, cotton or corn, and that for the whole amount of their advances, although in excess of the $5,000 named in the deed of trust.    That right rests upon the principle stated and illustrated in Irby v. Graham, 46 Miss., 425, and subsequent cases, to wit: That the creditors of a partnership have a preference to the joint funds and assets, to the exclusion of the creditors of an individual member of the partnership.    The rights of the latter extending no farther than to the surplus interest of the individual member after the joint liabilities have been satisfied.    See Williams v. Gayle, MSS. opinions.

2d.    The trust creditors have a preference to the entire fund in litigation, joint and individual, over the judgment creditors, to the extent of five thousand, the sum named in the deed.

3d.    In applying the trust fund to the payment of the debts to Toof, Phillips & Co., the contract intends that the crops of cotton should be first applied; next in order and in aid of the crops, the plantation implements, mules or other effects jointly bound, and lastly the individual property of John H. Estill.

But if the crops and other partnership effects have actually realized and paid to the trust creditors the $5,000 and interest limited in the deed, then that security has been satisfied, as to any individual property embraced in it, and the judgment creditors, by reason of their lien, have a preference over the trust creditors to the extent of the value of such separate property.    See Haynes et al. v. Hough, MSS. opinion.

Recurring to the report of the master, it is shown that Toof, Phillips & Co. advanced to Estill and Ferris, $6,705, and to Estill & Son, $7,961.32.    The total of advances being $14,666 32.    Deducting the credits from cotton and cash, and there is still due $5,274; of this balance, $2,055 from Estill & Ferris, and $3,219 from Estill & Son.    To make good these sums, Toof, Phillips & Co. had a preference to the whole amount received from the cotton and other joint property.    The amount thus realized was a

little over $9,000, nearly four thousand dollars in excess of the sum agreed to be conveyed. But the deed of trust became thereby satisfied, so as to turn loose the 20 mules owned by John H. Estill, and upon them or their money value, the judgment creditors had a preference.

So much of the decree of the chancery court is erroneous, as allows to Toof, Phillips & Co., $3,500, the amount produced by the sale of the 40 mules, or so many of them as survived. One-half of that sum ought to have been appropriated to the judgment of the appellants.

That portion of the decree is reversed, and decree here in accordance with this opinion.