## LIFE INS. CO. OF VIRGINIA *v.* PAGE *et al.*

(Division A.   March 8, 1937.   Suggestion of Error Overruled April 19, 1937.)

[172 So. 873.   No. 31991.]

John W. Crisler, of Clarksdale, for appellant.

H. C. Mounger, of Greenwood, for appellees.

292

Lester G. Fant, of Holly Springs, and Lester M. Sack, of Clarksdale, for appellee, United States of America.

Argued orally by **John W. Crisler**, for appellant, and by **H. C. Mounger**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal from a decree of the chancery court of LeFlore county, awarding a personal decree against the appellee Jackson W. Page, and dismissing the appellant's bill of complaint in all other respects.

The Life Insurance Company of Virginia leased to the defendant Jackson W. Page a plantation in LeFlore county, consisting of 978 acres, for a rental of $2,700 for the year. The lease contract contained a waiver of the landlord's lien reading as follows:

"In order that the lessee may obtain funds to enable him to conduct his farming operations during the term of this lease, the lessor has simultaneously herewith and does hereby agree to waive its landlord lien for any advances up to an amount not to exceed, in any event, Four Thousand ($4,000.00) Dollars."

After the execution of this lease contract, the tenant, with the knowledge and consent of the insurance company, subleased 270 acres of the leased land to the Secretary of Agriculture of the United States for the sum of $1,368.90, payable in two installments of $684.45 each, to be paid by checks drawn payable to the Greenwood Production Credit Association of Greenwood, Miss.

After the execution of the original lease, the Greenwood Production Credit Association agreed to furnish the tenant to the amount of $2,137, which bore interest amounting to $43.79, but before making these advances, it required a separate and independent waiver to be executed by the insurance company and delivered to it. In addition to the amount secured from the Production Credit Association to conduct his farming operations, the defendant Page contended that he secured more than $1,100 for that purpose from his father-in-law, H. G. Kitchell, trustee of the estate of Vesta G. Kitchell, his deceased wife, and when the time arrived for the payment of the rent, it was contended that all the crops produced on the leased premises were used in repayment of the advances made by the Production Credit Association and H. G. Kitchell, trustee, for the purpose of carrying on farming operations on the land.

On November 30, 1934, the insurance company, in the exercise of its landlord's rights under the statute (Code 1923, section 8799), sued out a distress for rent against certain agricultural products produced on the land; also certain goods and chattels of said Page found on the leased premises; also a United States treasury check or warrant for $684.45 for the second installment of government rent, which was payable to and then in the hands of the Greenwood Production Credit Association, and also cotton tax exemption certificates covering 25,000 pounds of lint cotton.

On December 7, 1934, the Life Insurance Company, the landlord, filed its bill of complaint against the tenant,

Jackson W. Page, H. G. Kitchell, trustee of the estate of V. G. Kitchell, deceased, J. M. Weeks, assistant in cotton adjustment under the United States Agricultural Adjustment Act (48 Stat. 31, see 7 U. S. C. A. 601 et seq.), Oscar Wade, a subtenant on the leased premises, the Greenwood Production Credit Association, and others. The bill alleged that the rent was unpaid, and set forth the facts in reference to the pending attachment for rent, and prayed for the appointment of a receiver to take charge of the property levied on under the attachment, for a mandatory injunction to require the proper indorsement of the government check, and the cotton tax exemption certificates and the delivery thereof to the receiver, and for the subjection of all of said property to the payment of the complainant's claim for rent.

After proper notice of the application for the appointment of a receiver and the issuance of a mandatory injunction, without apparent contest, a decree was entered appointing a receiver and granting an injunction. Thereafter the receiver qualified and took charge of the property under levy, and, in compliance with the injunction, the tenant, Page, indorsed the cotton exemption certificates, and the government check, which was payable to the Greenwood Production Credit Association, was indorsed by it and delivered to the receiver, as was also certain stock in said association of the par value of $115 which had been issued to said Page when the loan to him was consummated. The receiver sold the tax exemption certificates for $500, and the government check for $684.45 was duly cleared through the United States Treasury, and the proceeds placed to the credit of said receiver. In addition, the defendant H. G. Kitchell, trustee, paid to the receiver $303 of rent from subtenants which had been paid to him for the repayment of alleged advances.

The defendant Page answered the bill and alleged that in pursuance of the general waiver of the landlord's lien

in the lease contract, he borrowed from the Greenwood Production Credit Association the sum of $2,137, and from H. G. Kitchell the sum of $1,177, for the purpose of making a crop, and that $303 of the proceeds of the crops raised by subtenants and paid as rent had been paid to the said Kitchell on the indebtedness due to him. It was further averred that the United States Treasury check for $684.45 was not subject to the attachment for rent, for the reason that it was not proceeds derived from agricultural products, but there was no claim that it was exempt from levy by reason of being government funds.

H. G. Kitchell answered the bill, and asserted a right to the $303 which had been paid to him out of the proceeds of the crop, on the ground that it was in part payment of money advanced by him under the waiver of the landlord's lien for the purpose of enabling the tenant to produce a crop. He further asserted a superior lien on personal property and agricultural implements that had been levied on, by virtue of the lien of a deed of trust thereon executed to him, as trustee for the estate of V. G. Kitchell, deceased, on March 1, 1933, but he asserted no right or claim to the United States government check or the tax exemption certificates.

The Greenwood Production Credit Association answered disclaiming any interest in the controversy or in the proceeds of the government check payable to it, and it indorsed the check and delivered it to the receiver, and also delivered 23 shares of its stock of the par value of $5 each, which had been issued by it to Jackson W. Page in consummating its loan to him.

The J. I. Case Company also intervened and asserted a prior lien on a certain piece of the agricultural machinery, under a conditional sales contract, and the right of this petitioner does not appear to have been contested.

After the answers had been filed and the cause had been set for hearing in vacation, the United States of

America filed a petition to intervene, which was granted, and it thereupon filed its petition setting up at length the contract that had been entered into between the tenant, Jackson W. Page, and the Secretary of Agriculture of the United States under the authority of the act of Congress known as the Agricultural Adjustment Act, under and by virtue of which the Secretary of Agriculture agreed, on behalf of the United States, to rent from said tenant 270 acres of the leased land, and alleging that the proceedings under which the government check for $684.45, and the tax exemption certificates, had been seized were in effect a suit against the United States, and its officers and agents acting in their official capacities, and that, consequently, such proceedings were illegal and unauthorized. It was further alleged that the said check and exemption certificates were issued as a special benefit, for the use and enjoyment of said Jackson W. Page, and were, therefore, exempt from process of the court, and could not lawfully be diverted to satisfy the debts owing by said Page. It was further alleged that said government check had been issued and delivered to the Greenwood Production Credit Association in pursuance of a contract so to do, to be applied in the discharge of the indebtedness of said Page to said association, but that when the check was so delivered, the government had no knowledge of the fact that said indebtedness to the association had previously been fully paid and satisfied. It was further alleged that, at the time of the levy thereon, the surplus cotton tax exemption certificates had been surrendered by Page to J. M. Weeks, assistant in cotton adjustment of LeFlore county, to be disposed of for the benefit of said Page.

The appellant answered the intervention petition, and thereupon the cause proceeded to trial, resulting in a decree awarding a personal recovery against Jackson W. Page for the amount of the rent due, but dismissing the bill as to all the property involved. It was further

adjudged therein that the United States government check and the tax exemption certificates were exempt from attachment, and that the levy thereon was illegal and invalid, and that the receiver should pay the proceeds thereof to the defendant Page. It was further adjudged that the claim of H. G. Kitchell to the $303 he surrendered to the receiver was valid, and that this sum should be repaid to him by the receiver. It was also adjudged that the claims of the J. I. Case Company, and H. G. Kitchell, trustee of the estate of his deceased wife, Vesta G. Kitchell, to the farming implements levied on were also valid.

Among others, the appellant assigns as error the action of the court in "disallowing complainants claim to the $303.00 paid to H. G. Kitchell, and by him turned over to the receiver." Upon this point, it is contended that the waiver quoted in full above did not operate in favor of the H. G. Kitchell, or any member of the public who made advances to enable the tenant to conduct his farming operations, but was a mere obligation on the part of the landlord to give a waiver to some particular person or persons upon request. We do not so construe this waiver. The waiver was general and absolute in its terms with the sole condition that advances made should be for the purpose of enabling the tenant "to conduct his farming operations during the term of this lease." Dreyfus v. W. A. Gage & Co., 84 Miss. 219, 36 So. 248. The evidence fully supports the finding of the chancellor that the said H. G. Kitchell made advances for the purpose of enabling the tenant to conduct his farming operations to an amount largely in excess of the value of the proceeds of the crop received by him as part payment thereof, and no error was committed in directing the receiver to repay the $303 received from Kitchell.

Appellant also assigns as error the action of the court in disallowing its claim to the goods and chattels of the

tenant which had been subjected to levy. The defendant H. G. Kitchell's claim to these goods and chattels, consisting principally of agricultural implements, which was sustained by the court, is based upon the following facts: On June 22, 1931, Jackson W. Page and his wife executed a deed of trust on this property to H. G. Kitchell, as trustee, with power of sale, to secure an indebtedness due to the estate of Vesta G. Kitchell, deceased. The property conveyed by this deed of trust was then located in Claiborne county, and the deed of trust was duly recorded in that county. On March 1, 1933, the said Page and wife executed a new deed of trust on said property, conveying it to H. G. Kitchell, as trustee with full power of sale, to secure an indebtedness to the "estate of Mrs. Vesta G. Kitchell," in the sum of $9,291.69, evidenced by a promissory note of even date therewith, payable March 1, 1934, which deed of trust was duly recorded in Claiborne county on March 1, 1933, and in LeFlore county on November 8, 1934.

Upon this assignment it is here contended that no beneficiary is named in this deed of trust who is capable of taking, or that no person recognized by law is named therein as beneficiary, and, in view of section 2156, Code 1930, the record of the deed of trust did not impart notice, and, consequently, the lien thereof was subordinate to the lien acquired by the distress proceedings herein. Section 2156, Code 1930, provides that the clerk of a chancery court "shall not record any mortgage or deed of trust in which the name of the beneficiary is not disclosed therein, and if such instrument is recorded it shall not impart notice to any one."

By reference to the will of Vesta G. Kitchell, deceased, which was offered in evidence on the trial of this cause, we find that the testatrix devised and bequeathed her property to her husband, H. G. Kitchell, as trustee for the use and benefit of her children, but that fact is not disclosed on the face of the deed of trust. While the

property was conveyed therein to H. G. Kitchell, as the trustee named to execute the trust, the beneficiary attempted to be named therein, as well as in the note evidencing the indebtedness secured thereby, is merely "estate of Vesta G. Kitchell." A conveyance to a deceased person or a fictitious person is void, Morgan v. Hazlehurst Lodge, 53 Miss. 665, and the estate of a deceased person as such is not a person recognized by law, Simmons v. Spratt, 20 Fla. 495. The estate of a deceased person vests in his heirs or legal representatives, and the attempted designation of a beneficiary in the deed of trust here involved does not sufficiently disclose the beneficiary to cause the instrument to constitute constructive notice of its contents. It was shown that the appellant had no actual notice of the deed of trust, and that the tenant represented throughout that the goods and chattels were free from liens of any character. We conclude, therefore, that the goods and chattels levied on should have been subjected to the payment of rent.

It was also contended that the court erred in holding that the United States Treasury check for $684.45, and the proceeds of the cotton tax exemption certificates of the value of $500, were exempt from levy, and in disallowing the appellant's claim thereto.

Under the contract between the tenant and the Secretary of Agriculture of the United States, it was agreed that all rental payments thereunder should be payable to the Greenwood Production Credit Association, which, of course, was for the purpose of repaying the amount which as the result of the waiver of the landlord's lien, the association had agreed to advance for the purpose of enabling the tenant to conduct his farming operations. However, before the final installment of the government rent became payable, the tenant utilized the agricultural products grown on the leased premises, which, in the absence of a waiver, would have been subject to the stat-

utory landlord's lien, in paying the balance due to the Production Credit Association. Without knowledge of that fact, the government, in pursuance of its contract so to do, issued and delivered to the Production Credit Association its check in final and full discharge of its obligations under the contract. Should the tenant then be allowed to utilize the agricultural products grown on the leased premises to release the government check for his exclusive use and benefit and free from any claim thereon for rent? Neither the tenant, nor H. G. Kitchell who advanced money to enable the tenant to produce crops, has asserted any claim that this check was exempt by reason of the fact that it constituted government funds, and the government asserted no such claim until after the check had been delivered to the proper payee, and paid by the United States Treasury.

The rule is recognized by the decisions of this court that a county warrant is subject to levy as personal property after it has been finally delivered to the proper payee, and this rule if not controlling is certainly persuasive here, where the warrant or check had been finally delivered to the proper payee under the government contract, and paid in full by the United States Treasury.

This check in effect represented the rent of 270 acres of the leased land which had been taken out of cotton production, and after the government's rights and interest therein have ended, the tenant should not have the right to this rent to the exclusion of the landlord whose land was utilized for the purpose.

The Greenwood Production Credit Association is not here shown to be such a governmental agency as falls within the rule prohibiting legal process against government agencies, and furthermore we think the government's attempted assertion of exemption came too late. The tenant asserted no claim to the check by reason of any such exemption, and when the government issued the check and delivered it to the proper payee under its

contract, and the check was paid by the Treasury, we think the government's interest therein was at an end. In reaching this conclusion, we have not considered as material the fact that in United States v. Butler, et al., Receivers of Hoosac Mills Corp., 297 U. S. 1, 56 S. Ct. 312, 80 L. Ed. 477, 102 A. L. R. 914, the Agricultural Adjustment Act has been held to be unconstitutional. We think the decree should have directed the receiver to apply the proceeds of this check toward the payment of rent due to the landlord.

As to the surplus cotton tax exemption certificates, we think the decree of the court below is correct. The tenant originally received the certificates as trustee under a declaration of trust executed by him under the requirements of the Cotton Control Act of April 21, 1934 (48 Stat. 598), and the regulations thereunder prescribed by the Secretary of Agriculture of the United States. This declaration of trust set forth very stringent regulations as to the use and disposition of these certificates, and required that they should not under any circumstances be mingled with or treated as a part of the tenant's assets or estate, and further required that any surplus certificates should be delivered to the assistant in cotton adjustment for the county in which the farm was located, to be dealt with by him in accordance with prescribed regulations. The regulations under the Cotton Control Act of April 21, 1934, governing allotments and tax exemption certificates set forth in lengthy detail the duties and liabilities of trustees under the declaration of trust required to be executed upon the delivery of certificates to such a trustee, and as to the disposition of surplus certificates by the assistant in cotton adjustment. These certificates were not purchased or acquired by the use of agricultural products raised on the leased premises, and were not subject to any statutory lien, and under the regulations of the Agricultural Department they were subject to its control, through its agent, the assistant

in cotton adjustment, at the time they were levied on, and, therefore, they were not subject to levy to satisfy the landlord's claim for rent.

By an amendment to its bill of complaint, the appellant averred that the defendant Page was the owner of 23 shares of stock of the Greenwood Production Credit Association; that this stock was purchased with money realized from the sale of agricultural products raised on the leased land during the year; that it was entitled to an equitable lien on this stock; and that it should in equity be subjected to the payment of complainant's demand. In his answer, the defendant Page did not deny the averments of this amendment to the bill of complaint, and asserted no right or claim to or interest in this stock, and the decree should have subjected this stock to the payment of the rent of the leased premises.

The decree of the court below will, therefore, be reversed, and a decree modified to the extent herein directed will be entered here, and the cause remanded to be proceeded with in accordance with the decree so entered.

Reversed and modified decree entered.